# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# NORTHERN DIVISION

| | |
|---|---|
| BRIAN C. and RHONDA C., individually and as guardians of A.C.,<br><br>Plaintiffs,<br><br>v.<br><br>VALUEOPTIONS, and CONOCOPHILLIPS MEDICAL AND DENTAL ASSISTANCE PLAN,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:16CV93DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiffs' appeal of Defendants ValueOptions and ConocoPhillips Medical and Dental Assistance Plan's denial of medical benefits under an employee benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. The parties filed cross motions for summary judgment. On October 3, 2017, the court held a hearing on the motions. At the hearing, Plaintiffs were represented by Brian S. King and Nediha Hadzikadunic, and Defendants were represented by Belinda D. Jones, Henry I. Willett, and Erik A. Christiansen. The court took the matter under advisement. Having fully considered the evidence in the administrative record and law relevant to the motions, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiffs appeal Defendants' denial of medical benefits for residential treatment for their

teenage daughter, A.C. A.C.'s family had health coverage under the ValueOptions and ConocoPhillips Medical and Dental Assistance Plan ("The Plan").

AC was diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD") when she was five years old and received Section 504 accommodation under the Rehabilitation Act of 1973. A.C. experienced anxiety and behavioral problems and continued treatment and therapy throughout her elementary and middle school years. In eighth grade, A.C. began having truancy issues at school and her therapists began managing her medication more closely.

In 2014, at the age of 16, A.C. was seeing a much older boy with whom she smoked marijuana and had sex. In September 2014, Plaintiffs discovered A.C. in their home engaging in such conduct. A.C. ran away from home and was missing for six days. In October 2014, A.C.'s boyfriend brought her home and she informed her parents that she had been living in a drug house. A.C. stated that she would commit suicide and her parents took her to the Memorial Herman emergency room. A.C. was admitted to the West Oaks Psychiatric Hospital for seven days of observation. On October 14, 2014, Plaintiffs placed A.C. in a wilderness program called Second Nature Blueridge in Georgia. A.C. remained at Second Nature until December 24, 2014.

On December 29, 2014, five days after her release from Second Nature, Plaintiffs admitted A.C. to Solstice Residential Treatment Center in Utah. A.C.'s intake assessment and evaluation diagnosed her as having major depressive disorder, generalized anxiety disorder, oppositional defiant disorder, combined-type ADHD, and parent-child relation problem. However, Solstice did not believe that A.C. exhibited any symptoms in the "severe" category and did not diagnose A.C. with any psychosis, medical physical conditions, or substance abuse problems.

Shortly after A.C.'s admittance, Plaintiffs submitted a claim for coverage of A.C.'s treatment at Solstice. Defendants reviewed the request for authorization for residential treatment services for "medical necessity." The Plan provides coverage for "medically necessary" services, which are defined as services that are: (1) appropriate and required for the diagnosis or treatment of the sickness, injury, or pregnancy; and (2) the least expensive and most appropriate diagnostic or treatment alternative.

The Plan's clinical criteria for admission to residential treatment requires the following six criteria to be met for admission:

> 1. The child/adolescent demonstrates symptomatology consistent with a DSM-IV-TR (or most current DSM), (Axes I-IV) diagnosis which requires, and can be reasonably be expected to respond to, therapeutic intervention.
>
> 2. The child/adolescent is experiencing emotional or behavioral problems in the home, community and/or treatment setting and is not sufficiently stable either emotionally or behaviorally, to be treated outside of a highly structured 24-hour therapeutic environment.
>
> 3. The child/adolescent demonstrates a capacity to respond favorably to rehabilitative counseling and training in areas such as problem solving, life skills development, and medication compliance training.
>
> 4. The child/adolescent has a history of multiple hospitalizations or other treatment episodes at other levels of care and/or recent inpatient stays with a history of poor treatment adherence or outcomes.
>
> 5. Less restrictive or intensive levels of treatment have been tried and were unsuccessful, or are not appropriate to meet the individual's needs.
>
> 6. The family situation and functioning levels are such that the child/adolescent cannot safely remain in the home environment and receive community-based treatment.

In addition to the admission criteria, the existence of any of the exclusion criteria is sufficient to preclude treatment at the residential treatment level of care. The exclusion criteria

relevant to the present case is whether "[t]he child/adolescent can be safely maintained and effectively treated at a less intensive level of care."

On January 9, 2015, Defendants denied coverage in a letter, stating:

> You are a 16 year old female, admitted to mental health residential treatment program on 12/29/2014 for treatment of depression, anxiety, and behavioral issues, as a step down from a wilderness setting. You do not have any severe medical problems. Your medications can be monitored at a lower level of care. At admission, you reportedly have suicidal ideations, but no plan/intent to harm self. It was also reported to not be of danger to others, nor any psychotic symptoms. There were no behavior issues related to aggression reported in the clinical. You do not require treatment in mental health residential treatment program with 24 hour nursing care for treatment of your symptoms of depression, anxiety, and other behavioral issues. Further treatment of your mood symptoms and any unresolved family issues can be safely and effectively treated in less restrictive level of care such as an Intensive Outpatient Program, which normally meets three days a week.

Defendants determined that A.C. did not present with severity of symptoms warranting residential treatment and recommended that an appropriate level of care would be intensive outpatient therapy. Defendants also notified Plaintiffs of their right to request reconsideration.

Plaintiffs sought all of the reconsideration and appeals available to them. However, Defendants' analysis of the issue did not change substantially throughout the levels of review. Dr. Sanjay Vaswani conducted the initial review. After a request for a formal reconsideration, a second physician upheld Dr. Vaswani's denial. Plaintiffs then requested a level one appeal. Another ValueOptions physician reviewed A.C.'s records and determined that she did not need residential treatment. Finally, on Plaintiffs' level two appeal, the Benefits Committee found that there was insufficient documentation to establish that the criteria for residential treatment had

been met. Specifically, the denial identified a failure to meet residential treatment criteria 2, 4, and 5, and found that residential treatment services were not medically necessary. Rather, the appeals administrator determined that outpatient services would have been more appropriate. After fully exhausting the administrative process, Plaintiffs brought the present lawsuit.

## DISCUSSION

Plaintiffs argue that Defendants wrongfully denied their claim for residential treatment benefits for their daughter A.C. Before reaching the merits, the parties dispute the applicable standard of review.

**I. Standard of Review**

The parties dispute whether the case should be reviewed under a de novo or arbitrary and capricious standard of review. ERISA itself does not specify the standard of review that should be used. However, the United States Supreme Court has held that a denial of benefits challenged under ERISA, "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the plan grants discretionary authority to the administrator, the denial of benefits is reviewed under the "arbitrary and capricious" standard. *Chambers v. Family Health Corp.*, 100 F.3d 818, 825 (10th Cir. 1996).

The parties agree that the language of the Plan provides discretion and, based on the Plan language alone, an arbitrary and capricious standard of review applies. Nonetheless, Plaintiffs contend that the court should employ the de novo standard of review based on the number of alleged procedural irregularities in this case. Plaintiffs assert that Defendants' analysis was

5

cursory and not responsive to the issues Plaintiffs raised and that Defendants failed to provide the reviewers' credentials. In addition, Plaintiffs state that they sought information about the doctors' denial and approval rates over the prior three years for residential treatment claims, and Defendants did not provide the information. As such, Plaintiffs argue that Defendants failed to engage in a meaningful dialogue as required by ERISA.

However, Defendants provided Plaintiffs with a full and fair review, did not breach any fiduciary duty, and did not operate under any conflict of interest. Defendants timely and properly communicated their decisions to Plaintiffs and described the specific reasons for the decisions. ERISA requires only that a plan administrator give specific reasons, not the reasoning behind the reasons. The documents demonstrate that Defendants were considering Plaintiffs' submitted information and arguments. A disagreement in the application of the correct criteria does not equate to a failure to consider Plaintiffs' arguments. Moreover, Defendants were not required to provide the denial rates to Plaintiffs because there was no conflict of interest alleged and such information was not particularly relevant. The 60 Minutes program on residential treatment did not apply to Defendants.

Even if there could be considered to be some technical violation of ERISA's regulatory requirements, the court concludes that there was substantial compliance with ERISA's regulatory requirements in this case. Plaintiffs assert, however, that substantial compliance may no longer be enough in the Tenth Circuit. In *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631-32 (10th Cir. 2003), the Tenth Circuit held that as long as an ERISA plan administrator substantially complied with the claim procedure regulations, it did not forfeit the abuse of discretion standard of review if the ERISA plan language provided discretionary authority. But *Gilbertson* was

applying the 1977 version of ERISA's claim procedure regulations and the regulations were amended in 2000. Since 2000, the Tenth Circuit has not addressed substantial compliance despite reviewing several ERISA cases.

Plaintiffs contend that the court should adopt the standard adopted by the Second Circuit in *Halo v. Yale Health Plan*, 819 F.3d 42 (2d Cir. 2016). However, other district courts in the Tenth Circuit have continued to apply the substantial compliance standard to the amended regulations. *Jaremko v. ERISA Admin. Comm.*, No. 10-1137, 2012 U.S. Dist. LEXIS 80108, at *6 (D. Kan. June 11, 2012); *Cleary v. Boeing Co. Emp. Health & Welfare Benefit Plan*, No. 11-cv-403, 2013 U.S. Dist. LEXIS 107571, at *20-21 (D. Colo. July 31, 2013). This court agrees that there is no basis for changing the Tenth Circuit's standard when the Tenth Circuit has not done so. However, even if the court applied *Halo*, the court finds any violation of the regulatory requirements in this case was inadvertent and harmless.

## II. Merits

The Plan provides for residential treatment if it is medically necessary. Plaintiffs argue that the Plan's decision to deny coverage must be reversed because the medical records demonstrate that A.C.'s condition met the medical necessity requirements for residential treatment and Defendants wrongfully relied on acute inpatient criteria to deny coverage for A.C.'s residential treatment. Defendants argue that their denial of residential treatment benefits was a reasonable interpretation of the Plan's medical necessity requirements.

Although Plaintiffs argue that Defendants improperly relied on the clinical criteria for acute inpatient benefits, the record shows that Defendants used the appropriate criteria. Just because the denial correspondence addressed whether A.C. was a harm to herself or others, does

7

not necessarily mean that the acute inpatient criteria was applied. Each letter specifically referenced the application of residential treatment criteria and enclosed a copy of the residential treatment criteria.

The fact that the letters reference whether A.C. was a threat to herself or others is merely a reflection of the fact that she was screened for current risks because she was noted to have exhibited mild suicide ideation with no intent or plan. This assessment was reviewed clinically and reported in the denial letters. This assessment, however, does not support Plaintiffs' argument that Defendants used the wrong criteria.

Under the residential treatment criteria, there are six criteria for admission that must be met. Defendants reasonably determined that A.C. did not meet admission criteria 2 and that exclusion criterion 3 applied because A.C. could be treated effectively at a lower level of care. There is no evidence specifically demonstrating that within only five days of being released from a wilderness program A.C. needed fully structured 24-hour per day care. A.C. was capable of being released from the wilderness program to her home environment. There appeared to be no problems at A.C.'s home during the five days she was there. Upon admission at Solstice, Solstice clinicians determined that A.C. had no psychosis, medical/physical issues, or substance abuse concerns. A.C. was emotionally and behaviorally stable upon her admission and she remained so throughout her treatment. A.C. attended home visits without incident while in treatment. The evidence supports the doctors' views that A.C. could have been treated with intensive outpatient therapy after she completed the wilderness program. Plaintiffs' position incorrectly relies on A.C.'s condition as she went into the wilderness program and assumes that she received no benefit from that intensive program. The records do not fully support that

position.

Four separate health care professionals reviewed Plaintiffs' request for authorization for residential treatment benefits. Each reviewed the clinical records and each determined that residential treatment was not medically necessary because A.C. was stable and did not require a highly structured 24-hour therapeutic environment. Under the arbitrary and capricious standard of review, Defendants' decision need not be the only logical one nor even the best one. The decision need only be sufficiently supported by the facts. Both parties have cited to evidence in the record supporting their positions. The court concludes that the determination was sufficiently supported by the facts. In fact, given the proximity of the residential treatment to the wilderness program and the lack of any evidence that there were problems at home during the five days that A.C. was at home, the court concludes that Defendants' decision was reasonable under any standard of review.

Finally, Plaintiffs seek attorney fees and prejudgment interest. However, Plaintiffs are not entitled to attorney fees or prejudgment interest because Defendants' denial of benefits was reasonable. Attorney fees are not appropriate because there was no culpability or bad faith.

## CONCLUSION

Based on the above reasoning, the court concludes that Defendants' decision to deny benefits under the Plan was reasonable and supported by substantial evidence in the record. Accordingly, Defendants' Motion for Summary Judgment [Docket No. 21] is GRANTED and Plaintiffs' Motion for Summary Judgment [Docket No. 22] is DENIED. The parties shall bear their own fees and costs.

DATED this 11th day of October, 2017.

BY THE COURT:

_____
Dale A. Kimball,
United States District Judge